UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 05-358-KSF

STEPHANIE YOUNG, et al.                                                                                    PLAINTIFFS

vs.                                            **OPINION AND ORDER**

JOSEPH B. MCCORD, et al.                                                                               DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on the Motions for Summary Judgment of Defendant Andrew McCord [DE # 110] and Defendants Joe McCord III, Kim McCord and JWM, a minor [DE #155]. Defendant Andrew McCord also moved to continue the trial [DE #111] previously scheduled for October 22, 2007 due to scheduling conflicts. Based upon another motion, the trial was rescheduled for November 5, 2007, by Order dated May 31, 2007 [DE #152]. Having been fully briefed, these motions are ripe for review.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

A.      Factual Background

On September 1, 2004, Deetroy Oldham was driving on U.S. 60 in Clark County at approximately 4:15 a.m. when his vehicle collided with a Hereford bull ("Bull") [DE #1, ¶ 6]. The top of the vehicle was sheared off and Oldham was fatally injured [DE #148, Ex. 3]. This wrongful death action is brought by the Administratrix of his estate and the next friend of Aireyanna Denise Lanay Oldham, an infant.

The Bull was carefully inspected by law enforcement, Joe McCord II, Andrew McCord and several others, but no tags, tattoos, or other identifying marks could be found [DE #155, pp. 3-4]. All defendants deny ownership of the Bull [DE #159, pp. 1-2]. Defendant Joe McCord II ("McCord

II") said in a recorded statement that he doubted the Bull was registered. "He didn't look that good." [DE #148, Ex. 4, Q. 48].

Plaintiffs allege that McCord II owned or managed the Bull or had it under his control or custody and negligently maintained fencing on his property or otherwise permitted it to run at large in violation of K.R.S. § 259.210(1) [DE #1, ¶¶ 8, 9, 10, 15]. Plaintiffs further allege that McCord II; his wife, Defendant Sheila McCord ("Sheila"); his two sons, Defendant Andrew McCord ("Andrew"), and Defendant Joe McCord III ("McCord III"); a daughter-in-law, Defendant Kim McCord ("Kim"), and a grandson, Defendant JWM, operate one or more joint ventures for raising Hereford cattle, that the subject Bull was an offspring of one of their jointly owned bulls, and that it may have been owned by any or all of them [DE #118]. Plaintiffs allege that Andrew owns real estate along U.S. 60 on which McCord II and McCord III graze cattle [DE #118, ¶ 25]. Plaintiffs also allege that McCord III and JWM entered the premises owned by McCord II and Andrew the evening before the collision to tend some cattle and left the gate to the roadway open [DE #118, ¶35].

The parties agree that McCord II owns two-thirds of a tract of land with frontage on U.S. 60 where the accident occurred. [DE #144, p. 4; DE #148, Ex. 2]. His son, Andrew, owns the middle parcel that contains a driveway with a cattle guard and a gate closest to the location of the accident [*id.*]. McCord II and Andrew share responsibility for maintaining the fencing on the properties [DE #148, Ex. 7; DE #144, p. 8]. McCord II's cattle graze on his property and Andrew's property adjoining the road [DE #144, pp. 6, 10]. McCord II and Sheila do business as Avalon Farms, and Sheila is a lifetime member of the American Hereford Association [DE #118, Ex. A, ¶ 19; DE #155, p. 5, n. 18].

McCord II's other son, McCord III; McCord III's wife, Kim; and JWM operate under the farm name KJM Polled Herefords [DE #118, ¶ 18; DE #155, p. 5, n. 18]. JWM was a member of the American Hereford Association during the relevant time and had Hereford bulls registered in his

2

name for purposes of showing them with 4-H and the American Junior Hereford Association [DE #118, ¶ 20; DE #155, p. 5, n. 18].

A Hereford bull named Botkins Victor 849 002 ("Botkins Victor 002") was born on January 4, 2000 and registered with the American Hereford Association to the following owners: Botkins Polled Hereford, Avalon Farms and KJM Polled Herefords [DE #155, p. 9; DE #148, Ex. 6]. Plaintiffs' expert testified that the Bull associated with Mr. Oldham's death is a progeny of Botkins Victor 002 [DE #159, p. 2]. The American Hereford Association shows five registered bulls as progeny of Botkins Victor 002, the most recent of which was born September 9, 2003 [*id.* at 3]. McCord II testified that he only registered 10 to 20 percent of his herd [*Id.*]. Sheila testified that they ceased registering any animals with the American Hereford Association in 2003 [*id.* at 4]. McCord II testified that he lost his records of the breeding operations, his "cow book," in May 2004 [*id.* at 3]. Sheila's records, based on what her husband told her, appear to contain some mistakes, but reflect that a number of Botkins Victor 002's offspring were designated for registration in the name of JWM [*id.*, Ex. 4].

McCord II's insurance policy for his business and personal property includes Andrew and McCord III as additional insureds [*id.*]. That policy, effective March 26, 2002, lists an inventory of nine bulls. McCord II estimated the dead Bull's age as 14 to 16 months. Andrew testified it was two years old [*id.*]. McCord II claimed he had only four bulls at the time of the accident, but he could identify only three of them and could not provide any information regarding the fourth bull, except that it was gone [*id.* at 4].

Defendants Joe McCord II and Sheila McCord have not moved for summary judgment. Andrew McCord moved for summary judgment, and a separate motion for summary judgment was filed by McCord III, Kim and JWM ("McCord III Defendants").

B.      Andrew McCord's Motion for Summary Judgment

Andrew moves for summary judgment on the ground that Plaintiffs have produced no evidence that he owned the Bull or had any duty regarding the care or custody of the Bull [DE #144, p.3]. He argues that a jury could only speculate regarding these issues [*id.* p. 4]. Andrew acknowledges that his bother, McCord III, testified that McCord III and JWM came to the farm the night before the accident to feed some cattle and left the gate over the driveway open [DE #144, p. 7]. McCord III testified that the gate was usually left open [*id.*]. Andrew testified that his practice was to close the gate over the driveway at night [DE # 144, p. 9], but he could not remember whether the gate was open or closed when he drove down the driveway to the scene of the accident after hearing the collision [DE #159, p. 6]. Andrew admitted that he and his father were partners in a joint farming operation in the past, but claimed that partnership was dissolved in 2000 [*id.*, p. 9]. Andrew denied having any joint business venture with his father or brother in September 2004 [*id.* pp. 9-10]. Andrew further denied owning any Hereford bulls in September 2004 [*id.*]. Andrew claims that, because there is no proof of his ownership, custody or control of the Bull, Plaintiffs cannot prove their case against him under K.R.S. § 259.210 or under a *res ipsa loquitur* theory [*id.*, pp. 16-19]. Finally, assuming for the sake of argument that one of the McCords owned or had control or custody of the Bull, Andrew argues that Plaintiffs must prove how the Bull escaped from the McCord property, which they have not done [*id.* p. 19].

C.      Motion for Summary Judgment by Joseph McCord III, Kim McCord and JWM

The McCord III Defendants move for summary judgment, likewise relying in part on the lack of identifying marks on the Bull and Plaintiffs' failure to prove who owned it [DE #155, pp. 3-7]. They argue that the Bull can only be linked to any of the Defendants "through pure speculation and conjecture" [*id.*, p. 4]. They note evidence that McCord II sold some registered Hereford bulls to others and argue that this Bull could also have been sold [*id.*, pp. 6-7]. The McCord III Defendants argue that none of them owned Hereford bulls at the time of the accident and that all bulls

4

registered in the name of JWM were registered only for purposes of showing, rather than ownership [*id.*, pp. 7-9].  They further rely on evidence that all of the Hereford bulls registered to JWM have been accounted for [*id.*, pp. 9-11].

They contend the only connection between the Bull and them is that the Bull was a Hereford and that they "allegedly owned Herefords at the time of the accident" [*id.*, p. 11].  They assert that Plaintiffs are seeking recovery under the doctrine of *res ipsa loquitur*, but that theory must fail because there is no proof that the Bull was under their control or management [*id.*, p. 12].  In support, they note that the only Hereford bull connected with them is Botkins Victor 002, and he is alive.  They argue they do not own any land near the accident site, are not the keeper of any animals there, and they were not in "the vicinity of the accident immediately prior to the collision" [*id.*].  They further argue there is no evidence of any action or inaction on their part that caused the Bull to be on the highway [*id.*, pp. 12-13].

The McCord III Defendants deny the existence of any joint venture.  They argue that, even if such a relationship existed, it was limited to the Hereford bulls being shown by JWM, which registered bulls have been accounted for [*id.*, pp. 13-14].  They also note there is no evidence of equal responsibility among the family members and no evidence of a sharing in profits and losses [DE #160, p. 5].  Finally, they argue that they owed no duty regarding the gate on the property of Andrew and McCord II because they were not present at the time of the collision, and there is no evidence that the Bull entered the highway through that gate [*id.*, pp. 14-16].  They also note that the gate was accessible to many people on the public highway.

In their reply, the McCord III Defendants reiterate many of the above arguments [DE #160]. They also argue that the evidence offered by Plaintiffs may implicate McCord II, but has no bearing on the claims against them [*id.*, p.2].

D. Plaintiffs' Response

Plaintiffs offer evidence of the property owned by McCord II and Andrew and the driveway and gate on Andrew's property through which entry is gained to the farm [DE #148, Exs. 1, 2]. They note that Andrew and McCord II shared responsibility for fence repair and that McCord II's cattle graze on Andrew's property. A police report reflects the approximate location of the accident near the driveway to the farms [*id*., Ex. 3]. Andrew and McCord III are listed as additional insureds on the farmowner policy [*id*., Ex. 5; DE #159, p. 2]. Plaintiffs rely on the testimony of their expert witness that the Bull was a progeny of Botkins Victor 002, which is registered to McCord II, Sheila and the McCord III Defendants [DE #148, p. 2].

Plaintiffs also rely on the insurance policy inventory of equipment and livestock in March 2002 that reflects nine bulls [DE #159, Ex. 1]. The American Hereford Association shows five registered offspring of Botkins Victor 002 [*id*., Ex. 3]. Plaintiffs note that McCord II only registered between 10 and 20 percent of his herd [*id.*, p. 3]. McCord has no accurate records of the offspring of Botkins Victor 002 because he claims he lost his "cow book" in May 2004 [*id*.]. Sheila's records reflect that many of the offspring were registered to JWM [*id.*]. Moreover, the McCords did not register any animals beginning in 2003. McCord claimed he had only four bulls in September 2004, but had no information regarding the fourth bull, except that it was gone [*id*, p. 4]. There are also conflicts in the evidence regarding the disposition of some of the bulls [*id*.].

Plaintiffs note that K.R.S. § 259.210 is not limited to owners in its prohibition against permitting cattle to run at large. Instead, it also reaches any person having custody or control of the cattle. The evidence was that JWM was actively involved in the care of some cattle on the farm and assisted McCord II with other animals and general farm work [*id.*, p. 5]. McCord III testified that the farm gate was always open, and Andrew could not remember whether it was open or closed at the time of the accident [*id.*, pp. 5-6]. Lastly, plaintiffs cite evidence of the joint activities of the family regarding the cattle breeding operations.

6

## II.     SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## III.    ANALYSIS

Plaintiffs do not rely on *res ipsa loquitur* in their response. Instead, they rely on K.R.S. § 259.210, which creates a rebuttable presumption of negligence upon an offer of proof of an accident involving livestock at large and ownership, custody or control. The statute provides in

7

part: " No person shall permit any cattle owned by him or under his control or in his custody, to run at large."

In *Ellington v. Strader*, 285 S.W.2d 497 (Ky. 1956), plaintiffs' automobile was struck by a cow at large on a public highway. The trial court directed a verdict for the defendant. The appellate court reversed and held that a verdict should have been directed for the plaintiff. The statute and the burden of going forward were interpreted as follows:

> After the plaintiffs established that the accident happened and offered proof that the defendant owned the guilty cow, it seems to us that it would not be unreasonable to require the owner of the cow, who had peculiar means of access to the facts as to how the cow got out, to make those facts known to the court. \*\*\*
>
> It is our conclusion, therefore, that the plaintiffs established a prima facie case of negligence on the part of the defendant, and that trial convenience, as well as the successful administration of justice requires the defendant to offer evidence unless he wishes a directed verdict to be rendered against him as to his liability, leaving to the jury only the amount of damages.

*Id.* at 498. Thus, to establish a prima facie case and entitlement to a directed verdict, a plaintiff need only show the accident happened and offer proof of ownership.

In *Sparks v. Doe*, 379 S.W.2d 252 (Ky. 1964), an automobile struck a cow on U.S. 60 in the darkness of early morning. *Id.* at 254. The defendants were not able to say how the cow escaped, but they produced evidence that the fences were good and that all gates had been closed and chained the night before. *Id.* at 255. Accordingly, negligence was a question for the jury.

In *Rankin v. Blue Grass Boys Ranch*, 469 S.W.2d 767 (Ky. 1971)(*abrogated on other grounds by statute regarding collateral source evidence*), an automobile collided with a mule on U.S. 60 at 5:00 a.m. The mule was owned by Blue Grass Boys Ranch, but was being wintered on the farm of Ann Cowgill. The trial court directed a verdict for Blue Grass Boys Ranch and submitted to the jury the issues of negligence and damages against Mrs. Cowgill. The damages award against Mrs. Cowgill was affirmed on appeal, despite evidence that "the fencing on her entire farm was in excellent condition and sufficiently strong and high to restrain livestock" and "the gates were shut and in good condition." Evidence that the ground was covered with snow, the absence

8

of evidence that the animal had been furnished water, and testimony that an animal without food and water would try to escape were sufficient to present a jury question of negligence. The court interpreted K.R.S. § 259.210 as follows:

> [T]he unexplained presence of livestock on the highway creates against the owner or custodian of the livestock a rebuttable presumption of negligence which will entitle an injured plaintiff to a directed verdict as to the defendant's negligence, unless the animal's keeper adduces rebutting evidence on that issue.

*Id.* at 769.

In response to Mrs. Cowgill's argument that the jury was permitted to speculate on the inference of negligence without evidentiary support, the court said:

> The court is of the view that the "speculation" suggested in behalf of Mrs. Cowgill is not within the ambit of forbidden speculation. Rather, all of the proven facts, considered along with the unexplained escape of the animals, furnish a basis for a jury's belief, based on reasonable probability, that the animals escaped by reason of Mrs. Cowgill's failure to exercise ordinary care to prevent their escape.

*Id.* at 772. Regarding Mrs. Cowgill's testimony that the gates were closed, the court said: "The statement by Mrs. Cowgill that she knew the gates were closed on the night before the accident is not a conclusive statement of fact, because it was made by a party to the action, *Bullock v. Gay*, 296 Ky. 489, 177 S.W.2d 883," 885 (1944), and there was a question regarding her opportunity to observe. *Id.* at 770-771. The court further noted that it would have been simple for Mrs. Cowgill to investigate and look for tracks in the snowy ground to explain how the animals escaped. "[T]he failure of the defendant to offer any reasonable explanation for the escape of the animals, when considered in light of all the surrounding circumstances, may be sufficient to warrant submission of the negligence question to the jury." *Id.*

In discussing the presumption of negligence, the court quoted Prosser, *Law of Torts*:

> There are, however, other presumptions which obviously are imposed in part as a matter of policy, to compel persons in a position of special responsibility to disclose evidence within their control, under penalty of a procedural disadvantage in the case if they do not. They are, in other words, "smoking out" presumptions, designed to bring about a result rather than to give effect to probabilities.

*Id.* at 771. Regarding K.R.S. § 259.210, the court said:

9

> It would appear that the "smoking out" policy referred to by Professor Prosser is sufficiently applicable to a keeper of animals who fails to offer evidence demonstrating that the animal's escape was not his fault, and does not explain why such evidence was unavailable.

*Id.* at 772.

When the evidence, all facts, and any permissible inferences from the facts in the present case are viewed in the light most favorable to the Plaintiffs, it is the opinion of this Court that the issues of ownership of the Bull and negligence are questions for the jury. Accordingly, the motions for summary judgment will be denied.

The Court recognizes that these Defendants all deny ownership of the Bull. These denials are, however, merely the uncorroborated testimony of interested witnesses. *See Oliver Machinery Co. v. Gellman*, 104 F.2d 11 (6th Cir. 1939). Plaintiffs produced evidence that the McCord III defendants have an ownership interest in Botkins Victor 002 in that KJM Polled Herefords is listed as an owner on its registration [DE #148, Ex. 6]. The McCord III Defendants insist that registration in the name of KJM Polled Herefords or JWM is solely to allow JWM to show cattle with 4-H and the National Junior Hereford Association [DE #155, p. 9]. However, the 4-H rules on which they rely state that the registration must be in the "name of the 4-H member exhibiting them" and that "farm-name-only registrations are not acceptable" [*id.*, p. 8]. The National Junior Hereford Association also requires that the "junior member must be listed as the breeder [*id.*]. Accordingly, registration of Botkins Victor 002 in the name of KJM Polled Herefords as an owner must serve a different purpose.

Botkins Victor 002 was unquestionably used for breeding Hereford cattle, but none of the defendants can provide complete records of the breedings, offspring, or disposition of the offspring. McCord II maintained such records at one time, but claims he lost them prior to the accident. There are currently no records of the unregistered offspring, and McCord II admits 80 to 90 percent of the herd is not registered. With respect to registered offspring, McCord II admits that at least one bull is gone, and he cannot explain what happened to it. Plaintiffs provided evidence that the

10

Bull involved in the accident was an offspring of Botkins Victor 002. The accident occurred adjacent to the farms of McCord II and Andrew. The farm insurance policy lists Andrew and McCord III as additional insureds and shows nine bulls in the 2002 inventory. Andrew admits a partnership with McCord II for farming operations in the past, but denies that it continued in 2004, despite allowing McCord II's cattle to graze on his property and sharing fence maintenance responsibilities.

In *Welsh v. United States*, 844 F.2d 1239 (6th Cir. 1988), the court interpreted Kentucky law and said:

> Where, as here, a plaintiff is unable to prove an essential element of her case due to the negligent loss or destruction of evidence by an opposing party, and the proof would otherwise be sufficient to survive a directed verdict, it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence. The burden thus shifts to the defendant-spoliator to rebut the presumption and disprove the inferred element of plaintiff's prima facie case.

*Id.* at 1248; *Rogers v. T. J. Samson Community Hospital*, 276 F.3d 228, 232 (6th Cir. 2002). The *Welsh* court noted that a rebuttable presumption is a "middle ground," which "neither simply condones the defendant's negligent spoliation of evidence at the plaintiff's expense nor imposes an unduly harsh and absolute liability upon a merely negligent party." *Welsh*, 844 F.2d at 1249. *See also One Beacon Ins. Co. v. Broadcast Development Group, Inc.*, 147 Fed. Appx. 535, 540 (6th Cir. 2005) ("Under Kentucky law, a missing evidence instruction ... is appropriate when there exists a genuine question of fact as to whether one party negligently destroyed or lost evidence relevant to an essential element of an opposing party's case").

Plaintiffs have provided sufficient evidence of ownership of the Bull to present a jury question. Depending upon the evidence at trial, Plaintiffs may be entitled to a jury instruction regarding spoliation and a rebuttable presumption of ownership.

Additionally, Plaintiffs presented evidence of custody and control of the farm cattle by McCord II and Andrew as they grazed on their farms near the road. There is also evidence that

McCord III and JMW tended cattle on the farms on a regular basis, including the evening before the accident. Whether the Bull was in the custody or control of the Defendants is a jury question.

Plaintiffs having offered proof of the accident and presented a jury question of ownership, custody or control under K.R.S. § 259.210, the burden then shifts to defendants to prove the absence of negligence. Contrary to Andrew's assertion that Plaintiffs must prove how the animal escaped, it is the Defendants who must prove that they exercised ordinary care to restrain the animals and prevent such an escape. The evidence at present from McCord III is that the gate over the driveway to the farms was usually left open, and from Andrew that he did not recall if the gate was closed when he went to the accident scene. This evidence is sufficient to create a genuine issue of material fact regarding negligence.

IV. CONCLUSION

The Court, being otherwise fully and sufficient advised, **HEREBY ORDERS**:

A. Andrew McCord's Motion for Summary Judgment [DE #110] is **DENIED**;

B. Andrew McCord's Motion to Continue Trial [DE #111] is **DENIED AS MOOT**; and

C. The Motion for Summary Judgment [DE #155] by Joseph McCord III, Kim McCord and JWM is **DENIED**.

This August 20, 2007.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**